**James Joseph O'BRIEN**

v.

**James D. HENDERSON, Warden, U. S. Penitentiary, Atlanta, Ga., and George J. Reed, Chairman, U. S. Board of Parole, Department of Justice, Washington, D. C.**

**Civ. A. No. 17519.**

United States District Court, N. D. Georgia, Atlanta Division.

Feb. 20, 1973.

James Joseph O'Brien, pro se.

John W. Stokes, Jr., U. S. Atty., Anthony M. Arnold, Asst. U. S. Atty., Atlanta, Ga., for defendants.

### ORDER

EDENFIELD, District Judge.

James Joseph O'Brien, a prisoner in the United States Penitentiary at Atlanta, has attacked the revocation of his mandatory release on the grounds that he was denied the right to a local revocation hearing as provided by 28 C.F.R. § 2.40. Because he was denied a local hearing, petitioner maintains that he was unable to show that the violations relied upon by the Board of Parole in revoking his release were without merit. The government has responded and on

the basis of the record thus far, the facts appear to be as follows.

Petitioner was mandatorily released pursuant to 18 U.S.C. § 4163 on February 27, 1970, after serving five years on a 15-year sentence for bank robbery. On December 16, 1971, a warrant was issued by the Board of Parole charging petitioner with numerous violations of his parole including arrests for burglary, larceny, receiving stolen goods, and fraudulent use of credit cards; leaving the district without permission; failure to report to his probation officer as directed; and failure to report change in residence. Subsequent to his arrest, an attempt to conduct a preliminary interview was made by United States Probation Officer Richard A. Eastman on February 28, 1972. The content of that interview is in dispute and, as discussed below, further inquiry into the parties' conflicting accounts will be necessary to determine the validity of petitioner's allegations. Shortly after the preliminary interview, petitioner was transferred to the Atlanta penitentiary where on April 14, 1972 a mandatory release revocation hearing was conducted. While petitioner requested and received appointed counsel, he subsequently refused to be represented at the hearing. Petitioner's mandatory release was revoked on May 9, 1972.

The only substantive issue presently before the court is whether or not the Board of Parole refused to allow petitioner a local revocation hearing. The government contends that at the preliminary interview petitioner refused to admit to his identity, James Joseph O'Brien, and that he refused to "complete Parole Forms F-2 and Appointment of Counsel Forms 22." [1] While unclear from the government's response, it appears that the "Parole Forms F-2", noted above, constitute the "Revocation Hearing Election Form," which allows the parolee to request either (1) that he be given a revocation hearing upon his return to a federal institution; (2) that the preliminary interview be postponed; or (3) that he be given a local revocation hearing. The government states that because the Board of Parole "received no instructions whatever from O'Brien as to how he wished us to proceed regarding the preliminary interview or subsequent revocation hearing," he was transferred to the Atlanta penitentiary for the required mandatory release revocation hearing.

Petitioner's version of the February 28th interview, and the period immediately following, is substantially different from that of the government. Petitioner contends that he refused, on constitutional grounds, to answer questions by Officer Eastman pertaining to crimes with which he was charged by local Pennsylvania authorities. In particular, petitioner maintains that he denied being one "James Joseph Lucere", the name allegedly used by him while committing certain of the crimes charged, and that he stated to Eastman that "a court of law would have to determine such an identity issue." Petitioner also denies that he refused to identify himself at the preliminary interview and denies ever being requested to sign the "Revocation Election Form", stating that no such document was ever presented to him.

Finally, petitioner claims that on March 22, 1972 he wrote a letter to Mr. Fred Greenwald, U. S. Probation Officer, requesting a local hearing. Attached to his original petition is a letter from Mr. Greenwald dated March 30, 1972, apparently in response to petitioner's request, which reads in relevant part:

"Your letter of March 22, 1972, has been received and forwarded to the parole executive for appropriate action.

"Please understand that if you wish a local hearing with legal representation and witnesses as indicated in your letter, you may have it but the cost of

---

1. Letter of February 29, 1972 from Fred Greenwald, U. S. Probation Officer, to Mr. James R. Pace, Parole Executive, U. S. Board of Parole.

a lawyer and fees for witnesses are your expenses. If on the other hand you are willing to admit to your identity (which you did not do when an attempt was made to have a preliminary hearing when you were taken into custody) and to the violations listed in the violation report; arrangements will be made for your return to the Federal Correctional Institution for your hearing."

The last paragraph of the letter has been rendered in part unreadable by a tear in the paper, but such of the paragraph as can be discerned continues as follows:

"By copy of this letter we are asking the U. S. Probation Office in the Middle District of Pennsylvania, the district in which you are . . . the preliminary hearing and forward the necessary papers to the parole executive."[2]

■ Leaving aside, for the time being, the misinformation concerning petitioner's obligation to pay for the cost of his own lawyer and witness fees should he elect a local hearing,[3] it appears from this letter that petitioner did

make inquiries about a local revocation hearing. This, and petitioner's denial that he refused to request a local hearing at the time of the preliminary interview, are sufficient to require a hearing on petitioner's contentions.

■ A parolee who refuses to give even limited cooperation to the arresting authorities, and fails to make his request known, waives his right to a local revocation hearing. *See* Strauss v. Smith, 417 F.2d 132 (7th Cir. 1969). Certainly, having adopted a posture of antagonistic intransigence a parolee cannot at some later time claim that his revocation was illegal because he was denied a statutory right.[4] A different situation exists, however, where a parolee's good faith request for a local hearing is made before his parole has been revoked, where under all the circumstances it is timely made, and where the failure to request a local hearing at the time of the preliminary interview is not attributable to a desire for delay or obstruction. Such a situation may exist here.

Petitioner's motion that he be released on bond pending disposition of the present action is denied.

2. In view of its possible importance, the court anticipates that the government will obtain a complete copy of Mr. Greenwald's letter.

3. The Criminal Justice Act, 18 U.S.C. § 3006A(a), provides funds for any person financially unable to obtain adequate representation who is subject to revocation of parole, without qualification as to where the parole revocation hearing will be held. This policy is repeated in the Board of Parole's "Revocation Hearing Election Form" which provides: ". . . [T]he alleged violator shall be afforded a revocation hearing by the Board either in a Federal institution or in the community near the place of the alleged vio-

lation. . . . If the alleged violator desires counsel to be appointed and is financially unable to employ an attorney, he may request the United States District Court in the district where the revocation hearing is to be held to appoint an attorney."

4. The court is here concerned with a violation of the Board of Parole's regulations set forth in 28 C.F.R. § 2.40, which provide a right to a local revocation hearing, and which go beyond the constitutional requirement announced in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), of providing a local preliminary hearing to establish probable cause.