### James Joseph O'BRIEN
#### v.
### James D. HENDERSON, Warden, U. S. Penitentiary, Atlanta, and George J. Reed, Chairman, U. S. Board of Parole.
#### Civ. A. Nos. 17519, 19214.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 18, 1973.

James Joseph O'Brien, pro se.

John W. Stokes, Jr., U. S. Atty., Anthony M. Arnold, Asst. U. S. Atty., Atlanta, Ga., for respondents.

## ORDER

EDENFIELD, District Judge.

On December 6, 1972, petitioner filed pro se pleadings with this court contesting the revocation of his mandatory release by the Board of Parole. The court treated this document as a petition for mandamus. Petitioner claimed that the procedures utilized in revoking his parole were violative of either the constitutional requirements of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), or the requirements of 28 C.F.R. § 2.40 (1973). Finding that petitioner had raised an issue of fact as to whether he had been denied a requested local revocation hearing, this court ordered an evidentiary hearing. O'Brien v. Henderson, 353 F.Supp. 1378 (N.D.Ga.1973). At that hearing it was determined that petitioner was in fact not given a local revocation hearing and the court ordered that he be returned to

Pennsylvania and given one. (Order of March 26, 1973.) Petitioner was afforded a local hearing with appointed counsel, a new order of revocation was entered, and petitioner was returned to the Atlanta federal penitentiary. Since that time this case has developed along two related paths. Petitioner has filed numerous pro se documents, some styled as motions to reopen Civil Action No. 17519 and some styled as independent petitions for habeas corpus. The latter resulted in the creation of Civil Action No. 19214. In these documents petitioner complains that many of the defects which were present in his first revocation recurred at his second revocation hearing, and additionally alleges that his presentation at the second hearing was prejudiced by the death or disappearance of witnesses during the delay since his first parole revocation. In response the United States has filed affidavits, letters, exhibits, and other pleadings seeking to document what occurred at petitioner's local revocation hearing and attempting to demonstrate that it has complied with all pertinent legal requirements. One result of all these filings has been that the issues involved in Civil Action No. 17519 and Civil Action No. 19214 have become inextricably intertwined.

Accordingly, Civil Action No. 17519 and Civil Action No. 19214 are ordered consolidated for all further hearings and proceedings before this court.[1]

 Petitioner's more recent filings indicate that he has become confused regarding the distinction between the constitutional requirements for parole revocation set forth in Morrissey v. Brewer and the regulatory requirements set forth in 28 C.F.R. § 2.40 (1973). The court's order of March 26, 1973 in Civil Action No. 17519 was based on a finding that petitioner had been denied the right to a local hearing which was granted to him by 28 C.F.R. § 2.40 (1973). This hearing is not the equivalent of the "preliminary hearing" required by Morrissey. The federal equivalent of the Morrissey preliminary hearing is the "preliminary interview by an official designated by the Board" which is required under 28 C.F.R. § 2.40 (1973). An exhibit filed by the United States attorney indicates that petitioner had such an interview on February 28, 1972, and that at that time petitioner refused to admit his identity. Such behavior by a parolee can waive his right to a local revocation hearing as well as to any further preliminary interview. Strauss v. Smith, 417 F.2d 132 (7th Cir. 1969). The adequacy of petitioner's preliminary interview has not hitherto been attacked in this proceeding.

In addition to this constitutionally required preliminary interview a parolee in the federal system is also given the option of having his final revocation hearing either in the locality in which he was retaken or after his return to the appropriate federal institution. 28 C.F.R. § 2.40 (1973). What the court found on March 26, 1973 was a violation of this nonconstitutional right of petitioner. Therefore the appropriate constitutional standard against which the local hearing ordered by the court should be measured is that set forth in Morrissey for the hearing which is denominated the revocation hearing.

Petitioner's parole was originally revoked on five stated grounds, two of these alleged serious criminal offenses[2] and the other three alleged technical parole violations.[3] When the local hearing ordered by this court was held on July 3, 1973, testimony was received from one

---

1. The court would also direct the parties' attention to the Fifth Circuit's recently emphasized preference that relief, if any, be granted in the form of habeas corpus rather than mandamus. Amaya v. U. S. Board of Parole, 486 F.2d 940 (5th Cir. 1973).

2. "1. (A) Burglary, Larceny, and Receiving Stolen Goods, (B) Receiving Stolen Goods,
(C) Fraudulent Use of Credit Cards; 2. Burglary, Larceny, Receing [sic] Stolen Goods and Conspiracy."

3. "3. Leaving District Without Permission; 4. Failure to Report to U. S. Probation Office as Directed; 5. Failure to Report Change of Residence."

voluntary witness favorable to petitioner, petitioner himself, and Mr. Greenwald, petitioner's parole officer. Petitioner was accompanied by appointed counsel. This hearing resulted in a finding that petitioner had violated two technical conditions of his parole.[4] None of the criminal charges were sustained.

Petitioner's pro se filings are prolix and largely concerned with evidence or lack thereof relating to the violations which he was not found to have committed. His allegations relating to the remaining violations bring into issue two of the six *Morrissey* minimal due process requirements: "(c) opportunity . . . to present witnesses and documentary evidence," and "(f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L. Ed.2d 484 (1972).

■ Petitioner raises two issues concerning witnesses. First, he alleges that the delay occasioned by the initial denial of his right to a local hearing has caused the death or disappearance of material witnesses. It is not clear whether any of these witnesses were (1) actually requested by petitioner,[5] or (2) would have, if available, testified as to those violations which were ultimately sustained.[6] Petitioner does, however, clearly allege that one of his witnesses, Reverend David Hannig, attempted to contact the parole office on the morning of his revocation hearing and was wrongfully discouraged from appearing as a witness by Mr. Greenwald.[7] Petitioner also clearly alleges that Reverend Hanning would be able to testify from personal knowledge that petitioner was not guilty of the charge of failing to report to his parole officer. If petitioner can substantiate these allegations there has clearly been a violation of his right to due process.

Petitioner also alleges that his request for production of a "probation office log book" was rejected although it would have proven that he had reported as required. Once again, if petitioner can substantiate this allegation he will have made a sufficient showing of denial of due process to invoke this court's obligation to afford him redress.

■ The most compelling of petitioner's points is his allegation that he was not given the constitutionally required notice of the "evidence relied on and reasons for revoking parole." Morrissey v. Brewer, *supra* 408 U.S. at 489, 92 S. Ct. at 2604. Perusal of the material placed in the record by the government reveals only two forms which can be construed as designed to constitute the required notice. These forms are entitled "Order and Reasons Form" and "Order and Reasons Form (amended)". Apparently the second of these is intended to supersede the first. These forms consist of a bare statement that petitioner's probation officer testified that petitioner committed the parole violations in question. The form gives no clue as to the substance of this testimony or what other evidence was introduced. It could be argued that in some

---

4. Charges 4 and 5 set forth in n. 3, *supra.*

5. Petitioner alleges he requested the presence of ten witnesses. A letter in the record from petitioner's appointed counsel indicates that only four of these were actually requested.

6. It is clear that their loss would not be prejudicial if they would have been helpful only on the unsustained charges. It is not clear to what extent their loss may be attributable to petitioner's initial refusal to cooperate with the parole officials.

7. There is both support for and contradiction of petitioner's allegations in the letter from petitioner's counsel summarizing the events at the hearings of July 3, 1973. A letter filed by the government from Arthur K. Malyneux, Supervisory Probation Officer for the Eastern District of Pennsylvania, indicates that efforts were made to locate Reverend Hannig, that they were unsuccessful, and indicates that Reverend Hannig's testimony was of little importance, in part because he is a used car salesman rather than a full-time man of the cloth. Petitioner rightly points out that his constitutional right to present his witnesses is not diluted by the opinions of Parole Board employees regarding the witness's profession.

minimal fashion this complies with the requirement of a statement of the evidence relied on. However, these forms contain nothing which could even arguably be denominated a "statement of the reasons for revoking parole".

*Morrissey* requires a two-step decisionmaking process in the revocation of parole:

> "The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?"[8]

The documents filed by the government make it an arguable proposition that petitioner has been put on notice that the first of these steps has transpired. They do not give any support to the contention that petitioner has been given so much as a hint that the second step has occurred.

When this case was originally presented to the court the Board of Parole claimed that it had established that petitioner had committed a variety of serious criminal offenses while on parole.[9] If this had been an accurate statement of the situation there would be little doubt that revocation of parole was indicated. However, petitioner now stands accused only of two technical violations of parole. The literature in this field makes it clear that such violations often result only in counseling rather than revocation of parole.[10] Petitioner has apparently been given no indication whatsoever as to what differentiates his case from these others. The relevant documents are totally devoid of any indication that the examiner ever considered whether or not these violations warranted return to prison. If the documents filed to date are all that were furnished to petitioner at the time his parole was revoked then the constitutional requirement that each parolee be given a statement of the "reasons for revoking parole" has not been fulfilled, and petitioner's right to due process has again been violated by the government.

Respondent has filed a number of letters and affidavits relating to this action which bear on the events surrounding petitioner's parole revocation. Lest respondent respond to this order with a brief based on those documents it should be stressed that *Morrissey* requires that notice of the evidence and reasons for revocation be given to each parolee *at the time his parole is revoked*. The requirement is not fulfilled by an ability to provide such notice at some later time to those few prisoners hardy enough to appeal to the federal courts to vindicate their rights.

In the course of this opinion the court has several times had occasion to refer to the volume of petitioner's pleadings and the difficulty of determining with exactitude the scope of his claims. This is doubtless in part attributable to petitioner's lack of formal legal training. However, not even the most skilled of counsel, finding himself in the Kafka-esque situation of being deprived of his liberty by a tribunal which will adduce no reasons for its decision, can complain concisely and clearly of his objections to such a decision. Revocation of parole without adequate explanation of reasons leaves the prisoner no recourse but to approach the court with an attempted rebuttal of all real, feared, or imagined justifications for his confinement.

### SUMMARY

Civil Actions Nos. 17519 and 19214 are ordered consolidated for all further proceedings and hearings before this court.

The Clerk of the Court is directed to set this case down for hearing at 10:00

---

8. Morrissey v. Brewer, *supra*, 408 U.S. at 479–480, 92 S.Ct. at 2599 (1972).

9. *See* n. 2, *supra*.

10. Note, 79 Yale L.J. 698 (1970).

o'clock, A.M., on January 3, 1974, in Room 318, Old Post Office Building, Atlanta, Georgia. This hearing will focus on petitioner's allegations that (1) delay in holding his revocation hearing caused him to be prejudiced through the death or disappearance of material witnesses, (2) officials of the Board of Parole improperly discouraged one of petitioner's witnesses from appearing to testify in his behalf, and (3) officials of the Board of Parole refused to produce documents in their possession which would have tended to be exculpatory of petitioner in regard to the parole violations charged against him.

Respondent is also hereby granted until the date of said hearing to show cause why petitioner's petition for habeas corpus should not be granted on the ground that he has not been afforded the evidence of and reasons for revocation of his parole, to which he is constitutionally entitled.