**James Joseph O'BRIEN**

v.

**James D. HENDERSON, Warden, U. S. Penitentiary, Atlanta, and George J. Reed, Chairman, U. S. Board of Parole.**

**Civ. A. Nos. 17519, 19214.**

United States District Court,
N. D. Georgia,
· Atlanta Division.

March 5, 1974.

See also 353 F.Supp. 1378.

James Joseph O'Brien, pro se.

John W. Stokes, Jr., U. S. Atty., Anthony M. Arnold, Asst. U. S. Atty., Atlanta, for defendants.

## ORDER

NEWELL EDENFIELD, Chief Judge.

The lengthy and convoluted history of these cases has been set forth in a previous order and will only briefly be recapitulated. *See* O'Brien v. Henderson, 368 F.Supp. 7 (N.D.Ga.1973). Early in 1972 petitioner's parole was revoked and he was sent to the federal penitentiary in Atlanta. He contested the legality of the revocation, and this court held a hearing on that issue in March 1973 (hereinafter referred to as "the March hearing"). At the March

hearing the respondents were ordered to return petitioner to the Eastern District of Pennsylvania for a local parole revocation hearing and to assist him in obtaining the testimony of his witnesses. The resultant local parole revocation hearing was held in Pennsylvania on July 3, 1973 (hereinafter referred to as "the July hearing"), and petitioner's parole was again revoked. Petitioner again contested the revocation and this court held a hearing on that issue on January 3, 1974 (hereinafter referred to as "the January hearing"). This order will attempt to dispose of the issues raised at that hearing.

At the January evidentiary and show cause hearing in these two proceedings petitioner appeared and testified, as did Mr. Fred Greenwald, a United States Probation Officer from Pennsylvania. The hearing focused on the events surrounding the July hearing which this court had ordered. At the January hearing substantial conflict developed in the evidence presented but several conclusions can fairly be drawn:

(1) Petitioner did not establish that the delay from March 1972 until July 1973 which was occasioned by the government's failure to give him a local revocation hearing had caused the irretrievable loss of any witness whose testimony might be crucial to his defense on either of the violations which the hearing examiner found he had committed.

(2) While the testimony was in conflict as to whether or not officials of the Board of Parole had actually discouraged petitioner's witnesses from appearing, it was abundantly clear that they had not complied with the court's instructions at the March hearing. During the March hearing the court attempted to make it clear that before the July hearing was held the Board and its employees were to make every effort to assist petitioner in locating his witnesses and determining whether their testimony would be as helpful as petitioner claimed. The evidence at the January hearing established that no meaningful effort was made to assist petitioner in this regard. It was uncontested that the Board had made no effort on its own to interview petitioner's witnesses and determine whether their testimony might affect the Board's own evaluation of the likelihood that petitioner committed the violations alleged. The Board entirely failed to obey the court's instructions to afford the petitioner a fair chance to present his defenses. The court finds that the July hearing did not comply with the court's instructions at the March hearing.

(3) Parole Board records submitted by respondent at the January hearing indicate that petitioner was in contact with his parole officer during both October and November of 1971. These records do not indicate that the petitioner's contacts with that office were as extensive as he testified they were, nor do they resolve whether these contacts were sufficient to fulfill the requirements of his parole conditions.

(4) The response filed by the government on the morning of the January hearing contains a summary of the revocation hearing held in July 1973. Parts VIII, IX, and X of this summary contain a more extensive explanation of the hearing examiner's reasons for determining that the appropriate sanction for petitioner's violations was revocation of parole than had heretofore been furnished to either petitioner or the court. However, the testimony at the hearing also made it clear that technical violations of parole are very seldom regarded as cause for revocation in the Eastern District of Pennsylvania.[1] However,

---

1. The following excerpt from the testimony is illustrative:

"THE COURT: Have you ever been to one [revocation hearing] where a man stood up and says, 'Now, this is a hearing on whether I violated my parole and I have some witnesses and I'm in jail and I want them brought here in my behalf?' Have you ever seen that happen?

"MR. GREENWALD: No, sir, because in almost every instance, I think in every instance prior to this we had substantiated a violation through a conviction. . . . "

since the court finds that the July revocation hearing held was inadequate to comply with the March 1973 order, any ruling on whether there was adequate notice of the results of an inadequate hearing could only be dicta.

Based on the evidence introduced at the January hearing the court finds that at the July local revocation hearing petitioner was not given an adequate opportunity to present his defenses to the parole violations with which he was charged. It is hereby ordered and adjudged that James Joseph O'Brien be returned forthwith to the Eastern District of Pennsylvania and be given a local parole revocation hearing on the alleged violations of his parole. At and before such hearing the officers of the Board of Parole are directed to make every effort to assist petitioner in gaining access to the testimony of his witnesses. If the Board does not otherwise have sufficient legal authority to secure this testimony, its personnel are directed to assist petitioner in requesting the United States District Court for the Eastern District of Pennsylvania to issue subpoenas for the taking of testimony in this pending civil action as allowed by Rule 45 of the Federal Rules of Civil Procedure. It is further ordered that petitioner's transfer to the Eastern District of Pennsylvania be accomplished within 14 days after the entry of this order and that the local revocation hearing be held within 14 days after petitioner's arrival in that district unless petitioner requests an extension of time to enable him to secure the testimony of all needed witnesses.

The court is fully cognizant that this order imposes a heavier burden of cooperation on the Board of Parole than is normally the case at parole revocation hearings. Since petitioner has been confined for nearly two years without being afforded the parole revocation hearing to which he is legally entitled, this added burden is amply justified.

---

Mr. Greenwald later testified that he had heard of only one other case in which parole had been revoked in which the parolee had

not already been convicted of a criminal offense committed while on parole.